775 A.2d 189 (2001)
GARDEN STATE BANK/now/known as/ Summit Bank, a NJ Banking Corporation, Plaintiff-Respondent,
v.
Edwin GRAEF and Marilyn Graef individually and / as partners trading as Locklear Mechanical Contractors, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 2001.
Decided June 19, 2001.
*190 James H. Casey, Lakewood, for appellant.
W. Peter Ragan, Jr., for respondent (Ragan & Ragan, attorneys; Mr. Ragan on the brief).
Before Judges KING,[1] COBURN and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
On March 30, 1993, defendants, as guarantors for Locklear Mechanical, executed a commercial demand note in the amount of $37,410.84 to Summit Bank's predecessor, Garden State Bank (GSB). In July 1996, Summit acquired GSB. The balance due on the note at the time of conversion was $11,074.09, after defendants were credited for the $3899.78 in payments made to GSB. After the transfer, defendants made three payments to Summit, leaving a balance due as of January 31, 1997 of $8574.53.
Defendants defaulted on the loan. Summit brought suit for the accelerated loan balance and was granted summary judgment on March 23, 1999. Summit filed a motion to enforce litigant's rights for failure to respond to an information subpoena, and on December 2, 1999, the court entered an order for arrest and attorney's fees unless defendants furnished answers to the information subpoena within ten days. Upon receipt of the order for arrest, defendants apparently notified Summit that the court had on November 5, 1999 entered an order vacating its March 23, 1999 grant of summary judgment. On January 6, 2000, the court vacated the order for arrest and attorney's fees.
In an order dated February 4, 2000, the court denied Summit's subsequent motion *191 for summary judgment and noted that the "only issue is the amount actually due under the note. Plaintiff to supply back up data w/in 45 days. Defendant to supply proof of payments not credited w/in 30 days thereafter."
On March 13, 2000, Summit provided defendants with computer print-outs detailing the loan history from the "last renewal date" of December 15, 1995. Defendants provided no proof of payments. Defendant Edwin Graef asserted that it would be unreasonable to expect a construction worker such as himself to maintain a complete set of copies of canceled checks and claimed that since he and his wife had done their banking with GSB, its successor should be required to provide copies of their canceled checks.
The parties filed cross-motions for summary judgment. On April 28, 2000, Judge McGann granted Summit's motion and ordered defendants to pay a total of $12,907.65, comprised of the $8574.53 outstanding balance on the loan, $1286.17 in attorney's fees, and $3046.95 in interest from March 31, 1997 through April 28, 2000.
Defendants appeal and assert that the best evidence rule is violated where a summary, rather than the actual accounting record is provided. They also contend that the judge erred in granting summary judgment to the bank, as Summit failed to maintain records from the outset of the loan obligation and thus could not prove a prima facie case.
During argument on the motion for summary judgment, defendants' counsel admitted that his client owed money on the note but refused to pay the balance because Summit had failed to keep good records. The computer printouts submitted by Summit appear to be routine records which are kept by a bank in the regular course of business. Judge McGann specifically made this finding:
I find that the records are not in disarray of some sort, that the records were not lost. These are ... computer records. And once one bank is taken over by another I don't know what happens to what is stored on the computer at [GSB]. But there's nothing to indicate that in the switch over that there was a mistake of some sort. And there's every indication that it was regularly handled after the change and all of a sudden payments dropped off.
Based on a review of the record, we find that the documents provided by Summit qualify as business records under N.J.R.E. 803(c)(6). N.J.R.E. 803(c)(6) provides a business records exception to the hearsay rule for

Records of regularly conducted activity. A statement contained in a writing or other record of acts, events, conditions,... made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
N.J.R.E. 1001(c) provides that "[i]f data are stored by means of a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an `original.'"
In Hahnemann Univ. Hosp. v. Dudnick, 292 N.J.Super. 11, 678 A.2d 266 (App.Div.1996), defendant argued that the trial court erred by admitting into evidence computer printout records detailing her outstanding hospital bill. The hospital's witness had testified in order to establish a foundation for the documents.
*192 We disagreed, recognizing that "computers are universally used and accepted, have become part of everyday life and work and are presumed reliable." Id. at 16, 678 A.2d 266. "There is no reason to believe that a computerized business record is not trustworthy unless the opposing party comes forward with some evidence to question its reliability." Id. at 18, 678 A.2d 266.
The authenticity of the demand note contained in the record was never disputed and defendants admitted that monies were due on the loan. John Giangrossi, Summit's credit manager, certified that prior to the transfer of the note to Summit, GSB ran an accounting of the balance due. He provided computer printouts detailing the loan information, indicating a balance of $14,973.87 as of the last review on December 15, 1995, subsequent payments of $3899.78 made to GSB, leaving a balance forward of $11,074.09 as of July 12, 1996 when the loan was transferred to the new Summit Bank system, and an itemized list of the three payments made to Summit through the date of default. Not only is Giangrossi competent to lay a foundation for the records in that respect, but his position renders him "sufficiently familiar with the record system used" and enables him to "establish that it was the regular practice of [Summit] to make the record." Hahnemann, supra, at 18, 678 A.2d 266.
The printouts are admissible because they "appear[ ] perfectly regular on [their] face and as having been issued in the regular course of business prior to the inception of any controversy between the parties." Mahoney v. Minsky, 39 N.J. 208, 213, 188 A.2d 161 (1963). Even though the records do not itemize all payments made to GSB from the onset of the obligation, we are satisfied that they are sufficient to establish a prima facie case of what Summit claims is due on the outstanding loan. We understand the practicality of bank acquisitions, as a result of which older records may be lost or destroyed. We are satisfied that the records submitted by Summit are inherently trustworthy. Even though the records do not itemize the payments made during the two-and-one-half year period to the last renewal date, they indicate a significant reduction in the loan balance. Defendants continued to make payments thereafter and never questioned the loan balance until payments stopped and suit was instituted. Defendants submit only empty allegations in support of the inadmissibility of these records and have failed to provide specific evidence of other payments made or the unreliability of the payment history contained in these records. Defendants have, therefore, failed to carry their burden under Hahnemann, supra, at 18-19, 678 A.2d 266.
Defendants' reliance on Nerney v. Garden State Hosp., 229 N.J.Super. 37, 550 A.2d 1003 (App.Div.1988), is misplaced. In Nerney, we held that even if an X-ray constitutes a writing under the best evidence rule, testimony regarding its content is admissible upon a showing that it was lost or destroyed without fraudulent intent, unless, of course, such testimony would result in substantial prejudice to the other party. 229 N.J.Super. at 40, 550 A.2d 1003. Summit is not attempting to introduce testimony instead of the actual records; nor is there any prejudice where defendants have admitted to defaulting on their loan payments. The computer records established a reliable basis for finding that defendants owed plaintiff $8574.53 on the commercial demand note, plus fees and interest as provided for under the terms of the note.
Affirmed.
NOTES
[1] Judge King did not participate in oral argument. However, the parties consented after oral argument to his participation in the decision.